IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Edward W. Nottingham**

Civil Action No. 06–cv–00581–EWN–MJW

UNITED STATES *ex rel.*
JENNIFER J. FAY,

    Plaintiff,

v.

NORTHROP GRUMMAN CORPORATION, and
NORTHROP GRUMMAN SPACE AND MISSION
SYSTEMS CORPORATION,

    Defendants.

---

## ORDER AND MEMORANDUM OF DECISION

---

This is a case arising under the False Claims Act. Relator Jennifer J. Fay, executrix of the estate of Robert G. Babb, II, Ph.D., brings this suit on behalf of the United States Government, alleging that Defendants Northrop Grumman Corporation and Northrop Grumman Space Mission Systems Corporation committed various acts of fraud in connection with a government contract in violation of the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.* This matter is before the court on "United States' Motion to Dismiss," filed October 31, 2007. This court has jurisdiction pursuant to 28 U.S.C. § 1331 and 31 U.S.C. § 3732(a).

**FACTS**

*1. Procedural History*

On March 29, 2006, Relator Babb, now deceased, filed this action on behalf of the Government, asserting that Defendants had defrauded the Government in connection with their execution of a classified contract. (Compl. [filed Mar. 29, 2006].) After investigating Relator's claims for almost ten months, the Government declined to intervene. (*See* Gov't's Notice of Election to Decline Intervention [filed under seal Dec. 18, 2006] [hereinafter "Gov't's Election to Decline Intervention"].)

On March 16, 2007, Relator filed his second amended complaint, asserting that Defendants committed five violations of the FCA, to wit: (1) submitting false claims related to the contract's quality assurance provisions; (2) submitting false claims related to labor costs; (3) submitting false claims related to contractual award fees; (4) making false statements to conceal their conversion of the Government's intellectual property; and (5) making false statements to conceal the Government's entitlement to patent rights relating to said intellectual property. (Second Am. Compl. ¶¶ 151–243 [filed Mar. 16, 2007] [hereinafter "Second Am. Compl."].)

On August 20, 2007, the Government filed a motion to stay pending a ruling on its forthcoming motion to dismiss Relator's case, asserting that continued litigation would pose an unacceptable risk to national security due to the potential for the disclosure of classified information. (Mot. to Stay Proceedings Pending Ruling on Mot. to Dismiss [filed Aug. 20, 2007].) On September 13, 2007, Magistrate Judge Michael J. Watanabe granted the Government's motion to stay. (Order Regarding United States' Mot. to Stay Proceedings

Pending Ruling on Mot. to Dismiss [filed Sept. 13, 2007].) On October 10, 2007, Relator filed a motion for an "evidentiary ruling," asserting that he could prove *all* of his claims without classified information. (*See* Relator's Mot. for Evidentiary Ruling at 1 [filed Oct. 10, 2007] [hereinafter "Rel.'s Mot. for Evid. Ruling"].)

On October 31, 2007, the Government filed its motion to dismiss. (United States' Mot. to Dismiss [filed Oct. 31, 2007] [hereinafter "Gov't's Br."].) For the purposes of its motion, the Government stipulated that Relator's claims were meritorious. (*Id.* at 4.) Along with the motion, the Government submitted the classified declarations of three government agents. (*See* Certif. Regarding Classified Decls. Lodged in Supp. of the United States' Mot. to Dismiss, Ex. A–1 [Stevens Decl.], Ex. A–2 [M.H. Decl.], Ex. A–3 [J.L. Decl.] [filed Nov. 2, 2007].)[1] On November 19, 2007, Defendants filed a response in support of the Government's motion to dismiss. (Defs.' Resp. in Supp. of the United States' Mot. to Dismiss [filed Nov. 19, 2007] [hereinafter "Defs.' Resp."].)

On November 27, 2007, Relator's counsel notified the court of his client's death. (Relator's Fed. R. Civ. P. 25[a] Suggestion of Death [filed Nov. 27, 2007].) On January 17, 2008, Relator's counsel filed a motion to substitute the executrix of Relator's estate, Ms. Fay, as the relator in this matter. (Relator's Opposed Mot. to Substitute Relator's Executrix as Party Pl. [filed Jan. 17, 2008].) On January 23, 2008, I granted the motion to substitute and ordered the

---

[1]Throughout this order and memorandum of decision, I cite to these classified declarations as if they were exhibits attached to the Government's brief.

new relator to respond forthwith to the Government's motion to dismiss. (Courtroom Mins. [filed Jan. 23, 2008].)

On January 30, 2008, Relator filed a "stipulation" of dismissal of all but the first of the five claims alleged in the second amended complaint. (Pl./Relator's Stip. of Dismissal with Prejudice of the Second, Third, Fourth, and Fifth Counts of the Second Am. Compl. [filed Jan. 30, 2008].) The Government and Defendants separately objected to the "stipulation," noting they had not assented thereto. (United States' Obj. to Relator's "Stipulation" of Dismissal [filed Feb. 3, 2008]; Defs.' Resp. to Relator's "Stipulation" of Dismissal [filed Feb. 4, 2008].)

On February 15, 2008, Relator filed a motion to dismiss all claims but the first, asserting that she can prove that claim with unclassified material "having to do with quality assurance provisions of the [contract]." (Relator's Mot. to Dismiss Counts Two, Three, Four, and Five of the Second Am. Compl. [filed Feb. 15, 2008] [hereinafter "Rel.'s Mot. to Dismiss"].) The next day, Relator filed her response to the Government's motion to dismiss. (Relator's Mem. Opposing Gov't's Mot. to Dismiss [filed Feb. 16, 2008] [hereinafter "Rel.'s Resp."].) On March 3, 2008, the Government filed its reply. (United States' Reply to the Relator's Opp'n to the Motion to Dismiss [filed Mar. 3, 2008] [hereinafter "Gov't's Reply"].) On March 24, 2008, Defendants filed a reply brief. (Defs.' Reply in Supp. of the United States Mot. to Dismiss [filed Mar. 24, 2008].) This matter is fully briefed.

## 2. *Factual Background*

This subsection: (1) recounts the relevant allegations in Relator's complaint; (2) provides some necessary context regarding the nature of classified information, as well as the Executive

Branch's authority over such information; and (3) details the extent of the classified information implicated by this case.

### a. *Relevant Allegations*

For the purposes of this order, I will presume, as per the Government's request, that the allegations in Plaintiff's complaint are true. (*See* Gov't's Br. at 4.) Furthermore, in light of Relator's request that her second, third, fourth, and fifth claims be dismissed, I will focus only on the allegations and arguments relating to Plaintiff's first claim for relief. (*See* Rel.'s Mot. to Dismiss.)

From September 1999 to June 2005, Dr. Babb engineered software for Defendants. (Second Am. Compl. ¶¶ 1, 6–7.) In 2004, Dr. Babb worked on a large, classified software development contract between Defendants and the Government (the "Contract"). (*Id.* ¶¶ 10–11.) The program Defendants developed pursuant to the Contract (the "Code") was incredibly complex. (*See id.* ¶ 22.) While working on the Contract, Dr. Babb invented a program that could identify inefficiencies in complex software, such as the Code. (*Id.* ¶¶ 15–22.) When Dr. Babb evaluated the Code with his invention, it revealed grave defects in Defendants' programming work. (*Id.* ¶¶ 51–52, 155.)

Once Dr. Babb demonstrated his invention to Defendants, they were aware that their "shoddy programming work" was not satisfying the Contract's quality assurance provisions. (*Id.* ¶¶ 52, 160.) Thereafter, instead of seeking to meet such provisions, Defendants falsely certified to the Government that they were in compliance therewith. (*Id.* ¶¶ 108, 136, 153, 160, 162.)

Actual satisfaction of the quality assurance provisions could have significantly improved the performance of the Code and saved the Government millions of dollars.[2] (*Id.* ¶¶ 101–02, 161.)

### b. *The Executive Branch's Classification Program*

The national defense requires that certain information be classified and maintained in confidence in order to protect the United States' citizens, democratic institutions, homeland security, and relations with foreign nations. Exec. Order No. 13,292, Introductory Statement, 68 Fed. Reg. 15,315 (Mar. 25, 2003). Information is "classified" when the relevant governmental agency "determines that [its] unauthorized disclosure . . . reasonably could be expected to result in damage to the national security . . . and the [agency] is able to identify or describe the damage." *See id.* § 1.1(a)(1)–(4).

The Government has established criteria and procedures for handling classified information. *Id.* §§ 1.1–1.7. Typically, before an individual may access classified information, the Government must grant him a security clearance. *Id.* § 4.1(a); (*see* Gov't's Br., Ex. A–2 ¶¶ 5, 17 [M.H. Decl.]). An individual considered for clearance must: (1) undergo a background investigation; (2) sign an approved non-disclosure agreement; and (3) have a "need-to-know" specific classified information. Exec. Order No. 13,292 § 4.1(a)(1)–(3). An individual granted clearance must receive training on the "proper safeguarding of classified information and on the criminal, civil, and administrative sanctions that may be imposed on [one] who fails to protect classified information from unauthorized disclosure." *Id.* § 4.1(b).

---

[2]Relator has alleged that flaws in the Code may have caused the loss of American lives and aircraft in Iraq. (*See* Defs.' Resp., Ex. B at 13 [Relator's Supp'l Rule 26(a)(1) Disclosures].)

### c. *Classified Information in This Case*

The Government has required all of its attorneys assigned to Relator's case to obtain the security clearances required to access the Contract, the Code, and other information Relator has sought in discovery. (*See* Gov't's Br. at 6; Defs.' Resp., Ex. D [Classified Doc. List].) Defense counsel have applied for and received the requisite security clearances. (Gov't's Br. at 6.) Relator's counsel, John F. Murphy, has refused to apply for a security clearance. (*Id.*, Ex. A–1 ¶ 4 [Stevens Decl.].)

It has become apparent that Dr. Babb improperly disclosed classified information to Mr. Murphy, because Mr. Murphy has repeatedly made insecure, public disclosures of classified information. (*Id.*, Ex. A–1 ¶¶ 3–4 [Stevens Decl.], Ex. A–2 ¶¶ 40–43 [M.H. Decl.].) After Mr. Murphy's first inappropriate revelation of classified information, the Government instructed United States Air Force Major Patrick Stephens to visit Mr. Murphy to discuss the problem. (*Id.*, Ex. A–1 ¶ 4 [Stevens Decl.].) Major Stevens explained to Mr. Murphy that, without a clearance, it would be difficult for Mr. Murphy to understand fully what information relating to Relator's case is classified. (*Id.*) Major Stevens described, as best as he could given the circumstances, what information Mr. Murphy should not disclose. (*Id.*) At Major Stevens' request, Mr. Murphy signed an "Inadvertent Exposure Secrecy Agreement," in which Mr. Murphy acknowledged he had been exposed to classified information and promised not to reveal it further. (*Id.*, Ex. A–2, Attach. D [Inadvert. Exp. Secrecy Agreement.].) After this meeting, Mr. Murphy inappropriately disclosed information "which was of the same kind [Major] Stevens referenced in his in-person

meeting" on three separate occasions, including in public filings on this court's docket. (*Id.*, Ex. A–1 ¶ 4 [Stevens Decl.], Ex. A–2 ¶¶ 40–44 [M.H. Decl.], Ex. A–3 ¶¶ 13–16 [J.L. Decl.].)

In response to Relator's discovery requests, Defendants have identified thousands of pages of classified records. (*Id.*, Ex. A–2 ¶¶ 12–14, 32, 34 [M.H. Decl.]; Defs.' Resp., Ex. D [Classified Doc. List].) Pursuant to the above-cited executive order, these records are maintained in a secure location accessible only to persons with the requisite security clearances. (Gov't's Br., Ex. A–2 ¶ 32 [M.H. Decl.]); *see* Exec. Order No. 13,292 § 4.1(f), (g). These records include, among many others, the Contract, the Code, and the Code's program development files — not to mention many classified files referenced by Relator's expert witness, Victor Bandy, in an affidavit filed in support of Relator's brief opposing dismissal. (*See* Rel.'s Resp., Ex. A ¶¶ 25–28, 36, 41, 44, 50, 52 [Bandy Aff.]; Defs.' Resp., Ex. A ¶¶ 9–21 [Moses Aff.], Ex. D [Classified Doc. List]; Gov't's Br., Ex. A–2 ¶ 32 [M.H. Decl.].)

Additionally, Defendants have identified government employees from whom they intend to seek testimony concerning classified information relevant to their defense. (Gov't's Br., Ex. A–2 ¶¶ 35–38 [M.H. Decl.]; Defs.' Resp., Ex. E [8/1/07 Touhy Request].) Defendants seek, *inter alia*, discovery into the characteristics and capabilities of the Code, as well as Relator's allegation that Code failures caused the loss of American lives and property in Iraq. (Defs.' Resp., Ex. E [8/1/07 Touhy Request].)

## ANALYSIS

### *1. Legal Standard*

"The purpose of the FCA is to enhance the Government's ability to recover losses sustained as a result of fraud against the Government." *Ridenour v. Kaiser-Hill Co., L.L.C.*, 397 F.3d 925, 930 (10th Cir. 2005) (citation and quotation marks omitted). The FCA "empowers a private individual (a relator) to bring a civil claim . . . on behalf of the Government, against a person or company who knowingly presents a false claim to the Government for payment." *Id.* (citation omitted); *see United States ex rel. Hyatt v. Northrop Corp.*, 91 F.3d 1211, 1215 (9th Cir. 1996) ("[Q]*ui tam* plaintiffs are merely agents suing on behalf of the government, which is always the real party in interest.").

> The FCA prescribes the process for a *qui tam* action:
>
> After the relator files, the complaint remains under seal for at least sixty days, plus any extensions, during which time the Government has the opportunity to investigate the claim and determine whether it wants to intervene. [31 U.S.C.] § 3730(b)(2) and (3). After the Government intervenes or declines to intervene, the complaint is unsealed and served on the defendant. [*Id.*] § 3730(b)(3). . . . If the Government declines to intervene in the action, the relators have the right to conduct the action, subject, however, to possible future intervention by the Government upon a showing of good cause. [*Id.*] § 3730(c)(3). The Government can dismiss . . . the action despite the relator's objections. [*Id.*] § 3730(c)(2)(A).

*Ridenour*, 397 F.3d at 932. "[T]he Government, in a case in which it has declined to intervene in the seal period, is not required to intervene with a showing of good cause under § 3730(c)(3) before moving to dismiss the action under § 3730(c)(2)(A)." *Id.* at 934–35. In the instant case, the Government has moved to dismiss Relator's case pursuant to § 3730(c)(2)(A), which provides: "The Government may dismiss the action notwithstanding the objections of the person initiating the action if . . . the court has provided the person with an opportunity for a hearing on the motion."

The Government's "decision to dismiss a *qui tam* action has been likened to a matter within the government's prosecutorial discretion in enforcing federal laws," and § 3730(c)(2)(A) should not be construed to grant the Judiciary approval authority over the Executive's exercise of such discretion. *United States ex rel. Sequoia Orange Co. v. Baird-Neece Packing Corp.*, 151 F.3d 1139, 1143 (9th Cir. 1998); *accord Swift v. United States*, 318 F.3d 250, 253 (D.C. Cir. 2003) ("Nothing in § 3730[c][2][A] purports to deprive the Executive Branch of its historical prerogative to decide which cases should go forward in the name of the United States.").

The FCA is silent as to the standard of review for a motion to dismiss brought pursuant to § 3730(c)(2)(A). *See* 31 U.S.C. § 3730; *Ridenour*, 397 F.3d at 935. Thus, in *Ridenour*, the Tenth Circuit adopted the standard for dismissal established by the Ninth Circuit in *Sequoia Orange*, which requires the Government to: (1) identify "'a valid government purpose;'" and (2) show "'a rational relation between dismissal and accomplishment of the purpose.'" *Ridenour*, 397 F.3d at 936 (quoting *Sequoia Orange*, 151 F.3d at 1145); *see also United States ex rel. Ridenour v. Kaiser-Hill Co.*, 174 F. Supp. 2d 1147, 1149 (D. Colo. 2001), *aff'd*, 397 F.3d 925 (10th Cir. 2005) (noting the *Sequoia Orange* standard's similarity to "rational basis review of administrative action or statutory classification"). To establish a rational relation to a valid governmental purpose, "'[t]here need not be a tight fitting relationship between the two; it is enough that there are plausible, or arguable, reasons supporting the agency decision.'" *Ridenour*, 397 F.3d at 936 (quoting *United States ex. rel. Sequoia Orange Co. v. Sunland Packing House Co.*, 912 F. Supp. 1325, 1341 [E.D. Cal. 1995], *aff'd*, 151 F.3d 1139 [9th Cir. 1998]). If the Government satisfies this two-step test, the "'burden switches to the relator to demonstrate that

dismissal is fraudulent, arbitrary and capricious, or illegal.'" *Id.* (quoting *Sequoia Orange*, 151 F.3d at 1145).

## 2. *Evaluation*

With respect to the first prong of the *Sequoia Orange* standard, the Government argues that protecting classified information from disclosure is a valid governmental purpose. (*See* Gov't's Br. at 14.) The Supreme Court has recognized "the Government's '*compelling* interest' in withholding national security information from unauthorized persons in the course of executive business." *Dep't of the Navy v. Egan*, 484 U.S. 518, 527 (1988) (emphasis added); *see also Ridenour*, 174 F. Supp. 2d at 1155 ("Protection of the national security is undoubtedly a legitimate governmental interest."). Thus, I find that the first prong is met.

With respect to the second prong of the *Sequoia Orange* standard, the Government argues that dismissal is related to the prevention of inadvertent disclosures of classified information because: (1) classified information is implicated not only by Relator's claims, but also by Defendants' defenses; (2) Relator's counsel has already disclosed classified information; and (3) given that the case centers on compliance with a *classified* contract, further such disclosures are probable. (Gov't's Br. at 2, 17–21.) In their response in support of the Government's motion, Defendants argue, *inter alia*, that Relator cannot prove damages absent reliance on classified information and, even if she could, their defense would necessarily implicate classified information. (*See* Defs.' Resp. at 6–7, 9–18.)

After these briefs were submitted, Relator moved to dismiss counts two through five of her complaint in an apparent effort to narrow the ambit of information relevant to her case.[3] (*See* Rel.'s Mot. to Dismiss.) In essence, the first count asserts Defendants falsely certified that their flawed, unreliable Code satisfied the quality assurance provisions of the Contract. (*See* Second Am. Compl. ¶¶ 151–74; *accord* Rel.'s Resp., Ex. A ¶ 4 [Bandy Aff.].) Thus, Relator's claim appears to rest on a theory of "false certification of contractual compliance." *See Shaw v. AAA Eng'g & Drafting, Inc.*, 213 F.3d 519, 531–32 (10th Cir. 2000) (finding that a claim based on "false certification of contractual compliance" passed muster under the FCA). In her response brief, Relator asserts that she can prove this claim using only unclassified excerpts from the classified Contract. (*See* Rel.'s Resp. at 8, Ex. B [7/05 Software Development Plan], Ex. C [Quality Assurance Plan].) In apparent support of her position, Relator proffers the affidavit of Mr. Bandy, a computer scientist employed by Defendants from 1997 to 2007. (*See id.* at 3–12, 21–25, Ex. A ¶¶ 4, 14–29 [Bandy Aff.].)

In its reply brief, the Government argues that even when the complaint is limited to only its first count, risks to national security persist for at least four reasons. (Gov't's Reply at 2.) First, classified information is essential to the proof of Relator's first claim, as demonstrated by Mr. Bandy's affidavit's extensive reference thereto. (*Id.* at 2–4.) Second, the Government reiterates that Relator's counsel, "having refused to apply for a security clearance, is ill-equipped

---

[3]While Relator has moved to excise the majority of the claims in her second amended complaint, she has not attempted to pare down the vague, lengthy allegations upon which *all* of her claims rest. (*See* Second Am. Compl. ¶¶ 1–150 [setting forth general allegations, which are incorporated into each claim for relief].)

to argue that this matter does not require classified information." (*Id.* at 3.) Third, the Government emphasizes that, given Relator's counsel's history of disclosures of classified information in this case, "continued litigation promises additional disclosures." (*Id.* at 4.) Finally, the Government notes that Defendant will likely defend the claim based in part on classified information. (*Id.* at 2–3.) As set forth below, I find that dismissal is rationally related to the Government's interest in safeguarding classified information.

It bears emphasis that, under *Ridenour*, the Government need not demonstrate that continued litigation *will* result in the disclosure of classified information.[4] *See* 397 F.3d at 937 (finding risk of inadvertent disclosure of classified information, "even if theoretically minimal," sufficed to justify dismissal). Instead, as noted above, the Government must only demonstrate a "plausible" or "arguable" basis for dismissal. *Id.* at 936; *see also Ridenour*, 174 F. Supp. 2d at 1155 ("[E]ven when the legitimate interest articulated by the Government is only incidentally advanced, the rational relationship test has been satisfied.").

Mr. Bandy's affidavit is the foundation of Relator's assertion that she can prove her case "without the need to rely on classified information." (*See* Rel.'s Resp. at 3–12, 21–25.) However, the affidavit itself relates information relevant to Relator's claim which Mr. Bandy *acknowledges to be classified*. (*See id.*, Ex. A ¶¶ 25–28 [Bandy Aff.].) And notwithstanding the fact that Mr. Bandy positions himself as an expert on how Relator's case might be presented

---

[4]To the extent Relator genuinely believes that the common law "state secrets privilege" is relevant here, (*see* Rel.'s Resp. at 17 [discussing *United States v. Reynolds*, 345 U.S. 1 [1953]), I note that the Government has not invoked the privilege. Relator has proffered no support for her suggestion of a connection between that doctrine and dismissal under § 3730(c)(2)(A).

without classified information, his affidavit is replete with references to information which he neglects to mention *is classified*. (*Compare id.*, Ex. A ¶¶ 36, 41, 44, 50, 52 [Bandy Aff.], *with* Defs.' Resp., Ex. D [Classified Doc. List], *and* Gov't's Br., Ex. A–2 ¶ 32 [M.H. Decl.].) Moreover, Mr. Bandy's characterization of some of the information upon which he would rely as "mostly unclassified," "usually not considered to be classified," or as information that "should be unclassified," (*see* Rel.'s Resp., Ex. A ¶¶ 25–28 [Bandy Aff.]), does little to assure me that if this case proceeds, sensitive information will not continue to be at risk, (*cf.* Gov't's Br., Ex. A–2 ¶¶ 27–32 [M.H. Decl.]). In *Ridenour*, the "minimal" risk of the disclosure of classified information by parties with security clearances justified dismissal. *See* 397 F.3d at 937. I find that a similar risk exists here.

Moreover, the concerns raised by Mr. Bandy's affidavit — to which I will return shortly — are only multiplied by an examination of the conduct of Relator's counsel, Mr. Murphy. As noted above, after Mr. Murphy first disclosed classified information in this case, the Government contacted him and asked him to apply for a security clearance, but *Mr. Murphy refused*. (Gov't's Br., Ex. A–1 at ¶¶ 3–4 [Stevens Decl.], Ex. A–2 ¶ 39 [M.H. Decl.].) After Major Stevens met with Mr. Murphy in person to inform him of what particular information he should avoid disclosing in the future, Mr. Murphy *thrice* publically disclosed the very same sort of classified information. (*Id.*, Ex. A–1 at ¶ 4 [Stevens Decl.], Ex. A–2 ¶¶ 39–45 [M.H. Decl.].) Based on Mr. Murphy's proven incapacity or unwillingness to protect classified information, I find it is far more than "plausible" or "arguable" that such disclosures will continue if this case proceeds.

It is true that Dr. Babb was the source of the classified information Mr. Murphy has already disclosed. (*See* Gov't's Br., Ex. A–1 ¶¶ 3–4 [M.H. Decl.], Ex. A–2 ¶¶ 40–43 [Stevens Decl.].) While Dr. Babb certainly poses no further risk of future disclosures, nothing in the record before me suggests that Mr. Bandy is any more equipped than was Dr. Babb to exercise the discretion required to avoid further disclosures. To the contrary, Mr. Bandy's assertion that Relator can prove her case, at least in part, with information Mr. Bandy deems to be "mostly unclassified" plausibly suggests that Mr. Bandy will follow in Dr. Babb's footsteps. (*See* Rel.'s Resp., Ex. A ¶¶ 25–28 [Bandy Aff.].) More importantly, while it may well be Relator's "*intent* to maintain . . . the present case without any classified information," (Rel.'s Resp. at 21 [emphasis added]), this stated intent is belied by Relator's failure to hire a lawyer with a security clearance — and, therefore, with the capacity to exercise the discretion necessary to stand as a firewall against the inadvertent disclosures of her witnesses, expert or otherwise.[5]

Both *Ridenour* courts assumed that counsel on *all* sides would have security clearances. *See* 397 F.3d 925; 174 F. Supp. 2d 1147. Nevertheless, the "minimal" risk of disclosure of classified information in the course of the litigation of that case sufficed to support dismissal. *See* 397 F.3d at 937; 174 F. Supp. 2d at 1155. The risk in the case *sub judice* is conspicuously greater, since the danger here is not just the disclosure of classified information to uncleared

---

[5] Relator's "intent" is further belied by her failure to acknowledge — let alone dispute — Defendants' argument that she cannot prove damages absent reliance on classified information, since the Contract's payment criteria and the amounts billed and paid thereunder are classified. (*See* Defs.' Resp. at 7, 16–18; *see also id.*, Ex. A ¶ 19 [Moses Aff.].) That Relator's counsel cannot even view the very evidence that would seem to be central to Relator's alleged damages raises an additional rationale for dismissal: the futility of going forward.

parties, uncleared witnesses, and the public at large. Here, a national security breach occurs every time *Relator's counsel* is exposed to classified information. Additionally, by virtue of his role as counsel, Mr. Murphy is prone to exacerbate such breaches, since he stands poised to repeat such information each time he speaks or writes about the case.

Even setting aside the risk of disclosure involved in developing and presenting Relator's first claim, there is at least one additional gaping hole in her contention that dismissal of counts two through five would eliminate the risk of any future breaches: both Defendants and the Government agree that Defendants cannot defend this case without classified information. (*See* Gov't's Br. at 2; Defs.' Resp. at 7, 16–18; Gov't's Reply at 2–3.) Tellingly, Relator does not respond to this line of argument. (*See* Rel.'s Resp.)

In *Ridenour*, the district court faced a situation similar to that presented here, noting that "the difficulty with the relators' position is that it takes into account only those witnesses and documents which relators believe are necessary to *their* litigation strategy." 174 F. Supp. 2d at 1162 (emphasis added). The district court noted, however, it was *possible* that "the evidence which *defendants* might amass to defend against relators' claims could very well be much broader than the evidence which relators believe is necessary to litigate this action." *Id.* (emphasis added). This possibility was sufficient to satisfy the Government's burden under *Sequoia Orange*'s rational relation standard. *See id.* at 1162–63.

Defendants' likely primary defense will be that any allegedly false claims or statements made to the Government regarding the quality of the Code were immaterial to the Government's payments under the Contract. (Defs.' Resp. at 12–13 [citing *United States ex rel. Bahrani v.*

*Conagra, Inc.*, 465 F.3d 1189, 1200 (10th Cir. 2006) (recognizing that liability under the FCA must be premised on a material false statement or claim)].) Relator does not dispute Defendant's assertion that such a "materiality" defense would require disclosure of classified contractual provisions, revelation of classified documents concerning contract negotiations, and examination of classified Code performance data. (*See id.* at 9–18, Ex. A ¶¶ 7, 9, 17–20 [Moses Aff.].) Thus, even assuming Relator can prove her claim with unclassified excerpts from the Contract, I find it is "plausible" that a defense of her claim will require the consideration of classified aspects of the Contract and, thus, pose the risk of inadvertent disclosures thereof. *See Ridenour*, 397 F.3d at 936.

In sum, the Government has more than surpassed its burden of demonstrating a "plausible" or "arguable" connection between dismissal and the protection of classified information. Indeed, if it were the Government's burden to prove such a connection beyond a reasonable doubt, I would still be satisfied.[6]

Finally, I find that Relator has failed to carry her burden of demonstrating that dismissal in this case "is fraudulent, arbitrary and capricious, or illegal." *See id.* at 937. Relator makes no

---

[6]The Government offers a second purpose for dismissal, conservation of federal resources, which Relator does not deign to engage. (Gov't's Br. at 21–22; *see* Rel.'s Resp.) The Government asserts, *inter alia*, that continued litigation will distract its security officers and attorneys from more pressing national security matters. (Gov't's Br. at 21–22.) In *Swift v. United States*, the court recognized that the Government's goal of minimizing its expenses was a legitimate objective, and held that dismissal furthered the objective. 318 F.3d 250, 254 (D.C. Cir. 2003). Here, I am more than satisfied that if this case were to go forward, significant resources would be required, since the Government would be forced to monitor the case at every step to prevent the inadvertent disclosure of classified information by all parties to the case. As such, the conservation of resources constitutes a viable basis for dismissal.

coherent argument to this end, and nothing before me suggests that the motion to dismiss is improperly motivated. To the contrary, the record reflects that the Government investigated Relator's claims for almost ten months, and then declined to intervene in this matter, concluding that Relator's claims were speculative and her prospects of success remote. (*See* Gov't's Election to Decline Intervention; Gov't's Br. at 22.) Moreover, the Government represents that, after Relator moved to dismiss her second through fifth claims:

> [o]ut of an abundance of caution, [it] conducted a three-hour interview of [Mr. Bandy] on February 25, 2008, to assess the substance of the allegations contained within [his] affidavit. The government needs no further opportunity to be persuaded not to end this matter.

(Gov't's Reply at 7.) Having carefully reviewed Mr. Bandy's affidavit, as well as all of the submissions of the parties, I find no basis upon which to conclude that the Government's motion to dismiss is fraudulent, illegal, or arbitrary and capricious.

### b. *Request for a Hearing*

Relator baldly requests an evidentiary hearing concerning the Government's motion to dismiss. (Rel.'s Resp. at 28.) The Government urges that a hearing is neither required nor necessary. (*See* Gov't's Br. at 23–24.)

As stated above, the FCA provides: "The Government may dismiss [a *qui tam*] action notwithstanding the objections of the person initiating the action if . . . the court has provided the person with an opportunity for a hearing on the motion." 31 U.S.C. § 3730(c)(2)(A). While the language of § 3730(c)(2)(A) might suggest that a hearing is mandatory, the Tenth Circuit has unequivocally stated that hearings under this subsection "are only to be granted if relators can

show a 'substantial and particularized need for a hearing.'" *Ridenour*, 397 F.3d at 931 (quoting S. Rep. 99-345 at 26 [1986]); *see id.* at 931 n.10 ("'Congress apparently intended that [§ 3730(c)(2)(A)] should not pose a significant burden for the government or courts.'" [quoting *United States ex rel. Kelly v. Boeing Co.*, 9 F.3d 743, 754 n.11 (9th Cir. 1993)]). "'Such a showing could be made if the relator [were to] present[] a colorable claim that the . . . dismissal is unreasonable in light of existing evidence, that the Government has not fully investigated the allegations, or that the Government's decision was based on arbitrary and improper considerations.'" *Kelly*, 9 F.3d at 754 n.11 (quoting S. Rep. 99-345 at 26). As discussed at length above, Relator has failed to make any such showing.[7] Consequently, a hearing on this matter would serve no discernable purpose. Moreover, I agree with the Government that, given Mr. Murphy's lack of a clearance, a hearing in this matter would only pose "yet another opportunity for disclosure of national security information." (Gov't's Reply at 7.) Because a hearing in this matter would be pointless and risky, I decline to hold one.

   c.   *Scope of Dismissal*

Given "the potential collateral effect of *res judicata* associated with [Relator's] expansive and ill-conceived complaint," the Government requests that Relator's case be dismissed without prejudice as to it. (Gov't's Reply at 1 n.1.) Considering the breadth and generality of Relator's

---

[7]*Prior* to the Government's submission of its motion to dismiss, Relator filed a motion for an "evidentiary ruling," requesting an evidentiary hearing concerning what she *anticipated* the Government would argue in its motion to dismiss. (Rel.'s Mot. for Evid. Ruling.) Even assuming this bizarrely timed motion is still live, I find that none of the questionably coherent arguments raised therein suffice to show a "substantial and particularized need" for a hearing.

fifty-three page complaint, as well as the fact that this order does not constitute an adjudication on the merits of any of the allegations therein, I dismiss without prejudice as to the Government.

*3. Conclusion*

Based on the foregoing it is therefore ORDERED that:

1.  The GOVERNMENT's motion (#127) to dismiss is GRANTED.

2.  The clerk shall forthwith dismiss Relator's claims with prejudice as to Relator and without prejudice as to the Government.

3.  All other motions pending in this matter are denied as moot.

Dated this 27th day of March, 2008

BY THE COURT:

s/ Edward W. Nottingham
EDWARD W. NOTTINGHAM
Chief United States District Judge